## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| AXA CORPORATE SOLUTIONS, formerly known as AXA RÉASSURANCE S.A., ) | |
| Plaintiff, ) | No. 02 C 3016 |
| v. ) | Judge Joan H. Lefkow |
| UNDERWRITERS REINSURANCE COMPANY, ) | |
| Defendant. ) | |

**F I L E D**

JUL 1 6 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### NOTICE OF FILING

TO:    Robert C. Johnson
       Donna J. Vobornik
       Sonnenschein Nath & Rosenthal
       8000 Sears Tower
       Chicago, IL 60606

PLEASE TAKE NOTICE on Tuesday, July 16, 2002, we filed with the Clerk of

the United States District Court, Northern District of Illinois, Eastern Division, **AXA Corporate**

**Solutions' Response to Underwriters Reinsurance Company's Motion to Stay or Dismiss**, a

copy of which has been served upon you.

Respectfully submitted,
AXA CORPORATE SOLUTIONS

By: _____
    One of its Attorneys

**DOCKETED**

JUL 1 7 2002

Richard T. Franch
Joel T. Pelz
Megan B. Poetzel
JENNER & BLOCK, LLC
One IBM Plaza
Chicago, IL 60611
312 222-9350



## CERTIFICATE OF SERVICE

I, Megan B. Poetzel, an attorney, certify that on July 16, 2002, I served a copy of

**AXA Corporate Solutions' Response to Underwriters Reinsurance Company's Motion to**

**Stay or Dismiss**, by messenger delivery upon:

> Robert C. Johnson
> Donna J. Vobornik
> Sonnenschein Nath & Rosenthal
> 8000 Sears Tower
> Chicago, IL 60606

Megan B. Poetzel

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| AXA CORPORATE SOLUTIONS, formerly known as AXA RÉASSURANCE S.A., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 02 C 3016 |
| UNDERWRITERS REINSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

**FILED**

JUL 1 6 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## AXA CORPORATE SOLUTIONS' RESPONSE TO UNDERWRITERS REINSURANCE COMPANY'S MOTION TO STAY OR DISMISS

**DOCKETED**

JUL 1 7 2002

Richard T. Franch
Joel T. Pelz
Megan B. Poetzel
JENNER & BLOCK, LLC
One IBM Plaza
Chicago, IL 60611
312 222-9350

Dated: July 16, 2002



# TABLE OF CONTENTS

Page

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.  This Case Does Not Present the Exceptional Circumstances that Are Required to Overcome the Presumption Against Abstention Under the Colorado River Doctrine . . . 8

    A.  The Circumstances Surrounding the Forum Selection Clause Counsel for the Exercise of Jurisdiction by this Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B.  Consideration of the Ten Colorado River Factors Dictates Denial of URC's Motion for Stay or Dismissal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        1.  The state has not assumed jurisdiction over property. . . . . . . . . . . . . . . 13

        2.  The federal forum is more convenient than the state forum. . . . . . . . . . 13

        3.  This Court obtained jurisdiction before the Texas state court. . . . . . . . . 15

        4.  Although state law governs, this factor does not favor a stay or dismissal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        5.  The state court action will not adequately protect AXA Re's contractual right to an Illinois forum. . . . . . . . . . . . . . . . . . . . . . . . . 16

        6.  The federal proceedings have progressed further, and will progress faster, than the state proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        7.  AXA Re cannot remove the Texas State Court Action. . . . . . . . . . . . . . 17

        8.  The federal claim is not vexatious or contrived. . . . . . . . . . . . . . . . . . . 18

        9.  Piecemeal litigation in this situation cannot be avoided because URC chose not to intervene in the New York Action. . . . . . . . . . . . . . . 19

II.  URC's Motion to Stay or Dismiss Under 735 ILCS 5/2-619(a)(3) Has No Merit. . . . . 21

    A.  735 ILCS 5/2-619(a)(3) is a Procedural Rule that Does Not Apply in this Diversity Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

B.      Even if this Court Applies § 2-619(a)(3), a Stay or Dismissal Is Not
Appropriate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## **TABLE OF AUTHORITIES**

**Page**

### **FEDERAL CASES**

AAR International, Inc. v. Nimelias Enterprises S.A., 250 F.3d 510 (7th Cir. 2001) . . . . . . . . . 14

ADS Publishing Serv., Inc. v. Summit Group, Inc.,
1996 WL 332684 (N.D. Ill. June 13, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

In re Air Crash Disaster Near Chicago, 803 F.2d 304 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . 20

Armco Inc. v. North Atlantic Insurance Co., 68 F. Supp. 2d 330 (S.D.N.Y. 1999) . . . . . . . . . . 11

Associated Publications, Inc. v. Select Magazines, Inc.,
1986 WL 4714 (N.D. Ill. Apr. 11, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Auto Transportes Gacela S.A. De C.V. v. Border Freight Distributing &
Warehouse, Inc., 792 F. Supp. 1471 (S.D. Tex. 1992) . . . . . . . . . . . . . . . . . . . . . . 18

BJB Co. v. Comp Air Leroi, 148 F. Supp. 2d 751 (N.D. Tex. 2001) . . . . . . . . . . . . . . . . . . . . . 18

Basic v. Fitzroy Eng., Ltd., 132 F.3d 36, 1997 WL 753336 (7th Cir. 1997) . . . . . . . . . . . . . . . 21

Basic v. Fitzroy Eng., Ltd., 949 F. Supp. 1333 (N.D. Ill. Dec. 6, 1996) . . . . . . . . . . . . . . . . . . 22

Beggerow v. Affiliated Insurance Consultants, Inc.,
1996 WL 197680 (N.D. Ill. Apr. 22, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Bethlehem Contracting Co. v. Lehrer/McGovern, Inc., 800 F.2d 325 (2d Cir.1986) . . . . . . . . 13

Bonny v. Society of Lloyd's, 3 F.3d 156 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Chicago Title & Trust Co. v. Sizes Unlimited, Inc.,
1991 WL 119147 (N.D. Ill. June 28, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Coatings, Inc. v. National Cold Drawn, Inc., 611 F. Supp. 958 (E.D. Wis.1985) . . . . . . . . . . . 19

Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976) . . . . . . . 8, 10

Dominiun Austin Partners, L.L.C. v. Emerson, 248 F.3d 720 (8th Cir. 2001) . . . . . . . . . . . . . . 10

European American Bank v. Rampage Prods., Inc.,
    1988 WL 117441 (S.D.N.Y. Oct. 25, 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Evans Transportation Co. v. Scullin Steel Co., 693 F.2d 715 (7th Cir. 1982) . . . . . . . . 15, 19, 20

Fofi Hotel Co. v. Davera Corp., 846 F. Supp. 1345 (N.D. Ill. 1994) . . . . . . . . . . . . . . . . . . . . . . 21

Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Indiana Lumbermens Mutual Insurance Co. v. Specialty Waste Services, Inc.,
    774 F. Supp. 525 (C.D. Ill. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Jackson Hewitt, Inc. v. J2 Financial Services, Inc., 901 F. Supp. 1061 (E.D.Va. 1995) . . . . . . . 11

LaDuke v. Burlington Northern R.R., 879 F.2d 1556 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . 9, 10

Mattsson v. Gerry Wood Products Co., 1996 WL 147921 (N.D. Ill. Mar. 28, 1996) . . . . . . 21, 22

MG Capital LLC v. Sullivan, 2001 WL 1609382 (N.D. Ill. Dec. 17, 2001) . . . . . . . . . . . . . 21, 22

Moses J. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1(1983) . . . . . . 9, 15

National Union Fire Insurance Co. of Pittsburgh, PA v. Thomas,
    713 F. Supp. 62 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

Ryan v. Johnson, 115 F.3d 193 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15, 16

Seaboard Finance Co. v. Davis, 276 F. Supp. 507 (N.D. Ill. 1967) . . . . . . . . . . . . . . . . . . . . . . 21

Sturman v. Rush-Presbyterian St. Luke's Medical Center,
    128 F. Supp. 2d 1141 (N.D. Ill. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Sverdrup Corp. v. Edwardsville Community Unit School Dist. No. 7,
    125 F.3d 546 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

W.E. O'Neil Construction Co. v. National Union Fire Insurance Co. of Pittsburgh, PA,
    721 F. Supp. 984 (N.D. Ill. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 22

Woodford v. Community Action Agency of Green County, Inc.,
    239 F.3d 517 (2dCir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

## STATE CASES

A.E. Staley Manufacturing Co. v. Swift & Co., 419 N.E.2d 23 (Ill. 1980) . . . . . . . . . . . . . 22, 25

Crain v. Lucent Technologies, Inc., 739 N.E.2d 639 (Ill. App. Ct. 2000) . . . . . . . . . . . . . . . . 24

Crowell v. Golz, 744 N.E.2d 332 (Ill. App. Ct. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Golden Rule Insurance Co. v. Robeza, 502 N.E.2d 1070 (Ill. App. Ct. 1986) . . . . . . . . . . . . . 25

Hapag-Lloyd (America), Inc. v. Home Insurance Co., 729 N.E.2d 36 (Ill. App. Ct. 2000) . 23, 24

Kapoor v. Fujisawa Pharmaceutical Co., 699 N.E.2d 1095 (Ill. App. Ct. 1998) . . . . . . . . . . . 23

Kellerman v. MCI Telecommunications Corp., 493 N.E.2d 1045 (Ill. 1986) . . . . . . . . . . . . . . 23

May v. Smithkline Beecham Clinical Laboratories, Inc., 710 N.E.2d (Ill. App. Ct. 1999) . . 23, 24

People ex rel. Lehman v. Lehman, 215 N.E.2d 806, 809 (Ill. 1966) . . . . . . . . . . . . . . . . . . . . . 22

Village of Mapleton v. Cathy's Tap, Inc., 729 N.E.2d 854 (Ill. App. Ct. 2000) . . . . . . . . . . . . 22

Zurich Insurance Co. v. Baxter International, Inc., 679 N.E.2d 664 (Ill. 1996) . . . . . . 23, 24, 25

## FEDERAL STATUTES

28 U.S.C. § 1441(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. § 1441(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. § 1446(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

43 U.S.C. § 666 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATE STATUTES

735 ILCS 5/2-619(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

AXA Corporate Solutions, formerly known as Axa Réassurance S.A. ("AXA Re"), by its attorneys, hereby responds to the motion of Underwriters Reinsurance Company ("URC") to stay or dismiss the case pursuant to the <u>Colorado River</u> doctrine and/or 735 ILCS 5/2-619(a)(3). For the reasons stated below, URC's motion should be denied.

### BACKGROUND

AXA Re's claims before this Court arise out of a series of misrepresentations and breaches that occurred both during and after negotiations between URC and AXA Re pertaining to potential reinsurance for a Cash Flow Insurance Policy issued by URC to Chase Manhattan Bank ("Chase"). Key to the present motion is the fact that, throughout the contractual negotiations, AXA Re repeatedly stated that it would not participate as a reinsurer if the relevant contracts contained Texas choice of law and forum clauses. Thus, to induce AXA Re to agree to a reinsurance relationship, URC contractually agreed that it promptly would file the insurance agreements (specifically the Cash Flow Insurance Policy and the Loss Payee Endorsement), amended to provide for New York or Illinois law and jurisdiction, with the Illinois Department of Insurance ("Illinois DOI"). Contrary to its express written agreement, URC never filed anything in Illinois.

Now, URC contends that its duplicity should be rewarded by this Court, and that AXA Re should be forced to litigate its claims against URC in exactly the forum which URC contractually promised AXA Re it could avoid – Texas state court. URC has moved to stay or dismiss this case in favor of a third-party claim against AXA Re that *URC* filed in state court in Harris County, Texas only *one day* before filing this motion, and *six weeks after* AXA Re filed suit here in Illinois. As discussed in more detail below, this clearly is not one of the "exceptional circumstances" in which this Court should abstain from exercising jurisdiction under the <u>Colorado River</u> doctrine, or stay or dismiss a case under 735 ILCS 5/2-619(a)(3). Therefore, the Court should deny URC's motion.

-1-

**The Factual Bases of AXA Re's Claims and Contractual Right to an Illinois Forum**

As described in its Complaint, AXA Re's claims against URC arise out of an insurance-backed film financing program devised by Chase to shift to insurers and reinsurers the business risk that a loan made by Chase to finance the production of motion pictures would not be repaid. (Compl. ¶¶ 11-12.) In particular, this case involves a program structured for George Litto Pictures, Inc. ("GLP") and organized by Sawtantar Sharma, an insurance broker employed by the London-based Stirling Cooke Brown Reinsurance Brokers Ltd. ("SCB"). (Id. ¶ 13.) The initial proposal was for a five picture, $100 million "Master Facility." (Id. ¶ 14.) URC was presented with the opportunity to act as the insurer for the GLP transaction in August 1997, and URC employee Kathryn Lessmann became primarily responsible for negotiations relating to the transaction. (Id. ¶¶ 18, 20.)

The GLP transaction was one of URC's largest deals and was structured to produce one of the largest fees that URC ever had obtained. (Id. ¶¶ 18, 21.) To ensure that AXA Re would continue to participate as a lead reinsurer and that the GLP transaction would not fall apart – and that URC would receive its large fee – URC and Ms. Lessmann disregarded their duty of utmost good faith to their potential reinsurer, AXA Re, and failed to advise AXA Re of crucial changes to the deal, including the number of films to be financed, the amount of premium to be paid to reinsurers, the distribution of the premium and the allocation of any loss among the three layers of reinsurers and the state from which URC would issue the policy.

Of particular relevance to the present motion are URC's contractual promises regarding the law that would govern the insurance contracts, and the court in which the parties would resolve any dispute over those agreements. In and prior to February 1998, AXA Re told URC – and all the parties agreed – that the insurance, reinsurance and cut-through agreements should be governed by

-2-

New York law, and that any dispute would be settled in New York courts. (Id. ¶ 23.) URC subsequently learned that it did not hold the required license to write the policy in New York, but never advised AXA Re of that fact. (Id. ¶ 24.) Instead, URC, Ms. Sharma and Chase's lawyer, Michael Chapnick, decided to issue a policy in Texas, with the inclusion of a provision providing for New York law and New York jurisdiction. (Id. ¶ 25.) However, for over a year GLP did not come forward with any film and, as a result, the Master Facility policy never was executed.

In April 1999, Chase agreed to provide GLP with funding for two motion pictures, "The Crew" and "Standing Room Only." URC and Ms. Sharma asked AXA Re to move forward with reinsuring a two-picture deal, which would later be rolled into the five-picture Master Facility the parties had originally intended. (Id. ¶¶ 30-32.) To that end, URC submitted a two-picture Cash Flow Insurance Policy and Loss Payee Endorsement providing for New York law and jurisdiction to the Texas Department of Insurance ("Texas DOI") for approval. (Id. ¶ 35.) The Texas DOI would not accept the policy because it provided for New York law and jurisdiction. (Id. ¶ 49.) Without advising AXA Re, on June 18, 1999, URC filed a revised version with the Texas DOI that provided for jurisdiction in federal or state court in Texas and the application of Texas law. (Id. ¶¶ 49-50.)

AXA Re did not learn of the change to Texas law and jurisdiction until late June or early July 1999. (Id. ¶ 51.) On July 2, 1999, AXA Re, by in-house counsel Joelle de Lacroix, informed Ms. Sharma that AXA Re would not accept a contract that provided for Texas law and jurisdiction, and Ms. Sharma passed AXA Re's objection on to URC. (Id. ¶ 52.) Ms. de Lacroix reiterated that position in a July 6, 1999 telephone conference with URC, explaining that AXA Re would pull out of the deal. (Id. ¶ 53.) Ms. Lessmann responded that, because the insurers did not come on risk under the Cash Flow Insurance Policy until delivery of the first film, URC had about a year to move the state from which the Cash Flow Insurance Policy and Loss Payee Endorsement were issued. (Id.)

-3-

To research the feasibility of this suggestion, a URC in-house lawyer, Jeffrey Gunchick, contacted the Illinois DOI to determine if it would allow URC to issue the Cash Flow Insurance Policy and the Loss Payee Endorsement in Illinois. (Id. ¶ 54.) In another telephone call later on July 6, 1999, Ms. Lessmann told AXA Re that URC had "every intent to go to Illinois or some other state to make this work." (Id. ¶ 56.) Later that day, Mr. Gunchick represented that he had spoken to the Illinois DOI, which stated that it would approve a policy calling for New York law and jurisdiction. (Id.)

The next day, AXA Re informed URC that it would go forward with the GLP transaction only if URC agreed, among other things, promptly to file the Cash Flow Insurance Policy and the Loss Payee Endorsement in Illinois and to use its best efforts to obtain approval a policy which provided that the contract was subject to New York law and jurisdiction, or, if the Illinois DOI would not accept New York law, then with provisions for Illinois law and jurisdiction. (Id. ¶ 58.) These versions of the Cash Flow Insurance Policy and the Loss Payee Endorsement were to supercede any Policy and Endorsement filed in Texas. (Id.)

URC accepted AXA Re's offer first orally, and then in writing. A letter from Ms. Lessmann stated:

> To confirm our telephone conversation today, please be advised that Underwriters Reinsurance Company (URC) will file the Form of Cash Flow Insurance Policy, the Master Policy of Cash Flow Insurance, and the Loss Payee (Cut Through) Endorsement (with amendments requested by you today during our teleconference) for review and approval with the Illinois Department of Insurance as soon as practicable. The policy and endorsement wording that URC will file with the Illinois Department of Insurance (DOI) will designate New York as the choice of law and jurisdiction governing the terms of the contract. If the Illinois DOI will not approve New York as the choice of law and jurisdiction, then the policy and endorsement will be amended to designate Illinois law and courts instead.

(Id. ¶ 60-61.) Based on these representations, AXA Re conditionally approved two forms of Loss

Payee Endorsement, subject to the agreements of the July 7, 1999 telephone conference. (Id. ¶ 63.)

After obtaining AXA Re's approvals, however, URC failed to honor its contractual agreement and its duty to act in the utmost good faith with respect to the reinsurance transaction. URC decided not to make the promised filings with the Illinois DOI unless AXA Re agreed to additional alterations to the terms of the reinsurance that had not been part of the parties' July 7th agreement. (Id. ¶ 76.) When AXA Re refused to be bullied into accepting URC's unilateral changes, URC elected not to make the required Illinois DOI filings (id. ¶ 78), and the Texas law and jurisdiction provisions in the Cash Flow Insurance Policy and Loss Payee Endorsement were never amended to New York or Illinois as URC and AXA Re had contractually agreed.[1]

### The Other Lawsuits Relating to the Cash Flow Insurance Policy

There are currently three lawsuits pending relating to the Cash Flow Insurance Policy. AXA Re filed the first suit. In October 1999, AXA Re sued Chase and Stirling Cooke Brown in the Supreme Court for New York County, seeking declaratory and other relief ("the New York Action"). Specifically, AXA Re alleged that any claim by Chase for losses under the Cash Flow Insurance Policy and another insurance policy issued to secure loans made to GLP were not payable for a variety of reasons. URC was well aware of the New York Action. It was advised immediately of

---

[1] In addition to its duplicity with respect to the choice of law and forum provisions in the Cash Flow Insurance Policy and Loss Payee Endorsement, URC also (Compl. ¶ 90):

- failed to inform AXA Re that, on July 9, 1999, it entered into a secret side agreement with Chase to the effect that – notwithstanding the express terms of the Cash Flow Insurance Policy that it applied to two films – the policy would be limited to only one film, "The Crew";
- failed to file the amended version of the Loss Payee Endorsement with the Texas DOI, even though URC had represented orally and in writing on July 7 and 8, 2002 that it would do so;
- failed to inform AXA Re that it was negotiating with Chase to participate in the syndication of the GLP loan; and
- failed to inform AXA Re about numerous concerns an attorney for a reinsurer, Kemper Re, raised about the structure of the insurance and reinsurance transaction.

the filing of the suit by its agent, Ms. Sharma,[2] and during the approximately two years of discovery that took place, URC produced thousands of documents in response to a subpoena, and at least four of its employees or former employees were deposed for at least seven total deposition days. Although URC clearly had an interest in any determination of whether or not losses under the Cash Flow Insurance Policy were payable, URC elected not to intervene in the New York Action.

In the New York Action, Chase has obtained a declaration (after a lengthy trial, a jury answer to two special interrogatories and a Court-issued opinion) that AXA Re is obligated to Chase pursuant to a Loss Payee Endorsement, which was part of the Cash Flow Insurance Policy. The amount of any such obligation has not been determined and Chase has asked leave to amend its Complaint in New York to seek monetary damages against AXA Re. AXA Re intends to appeal the decision that Chase is entitled to declaratory relief against AXA Re.

AXA Re filed the instant action against URC in this Court on April 26, 2002, making claims for the following: (1) rescission of the reinsurance agreement based upon URC's breach of the duty of utmost good faith; (2) declaratory judgment that URC is obligated to pay for any monies AXA Re must pay to Chase under any Loss Payee Endorsement due to URC's breach of the utmost duty of good faith; (3) rescission of the reinsurance agreement based on URC's breaches of warranty; (4) declaratory judgment that URC is obligated for any monies AXA Re must pay to Chase under the Loss Payee Endorsement due to URC's breach of warranty; and (5) breach of contract.

On the same day, April 26, 2002, Chase filed an action in the Harris County, Texas state court against URC and Royal & SunAlliance Insurance plc, General Star International Indemnity Ltd, and Caisse Centrale de Reassurance S.A., who may be primary layer reinsurers of the Cash Flow Insurance Policy (the "Texas State Court Action"). (George Aff. Ex. A.) AXA Re was *not* a party

---

[2] AXA Re sent notice of the suit to URC's broker on October 19, 1999.

to this lawsuit when it was filed. Indeed, Chase expressly explained in its petition that it was not going to add AXA Re as a party to the Texas action because of the pendency of the New York Action. (Id. ¶ 35.) URC filed a general denial in response to the Texas action on June 7, 2002. (George Aff. Ex. B.)

After AXA Re served URC with a copy of the Complaint before this Court, URC's counsel requested an extension of time to respond, stating that its counsel needed more time to become familiar with the facts of the case. AXA Re agreed to an extension until June 11, 2002. On June 10, 2002 – only one day before URC's response to AXA Re's complaint was due – URC filed a third-party claim against AXA Re in the Texas State Court Action for breach of contract and declaratory relief contending that, if URC is obligated to pay Chase, AXA Re is obligated to pay URC its alleged share of the reinsurance. (George Aff. Ex. C.) The next day URC filed the current motion before this Court, with its only argument being that the pendency of the Texas State Court Action supports a stay or dismissal, an argument which requires little or no knowledge of the facts outside the allegations of AXA Re's Complaint.

## ARGUMENT

In ruling on URC's motion to stay or dismiss, this Court must accept as true the facts alleged in AXA Re's Complaint. See W.E. O'Neil Constr. Co. v. Nat. Union Fire Ins. Co. of Pittsburgh, PA, 721 F. Supp. 984, 986 (N.D. Ill. 1989) (denying defendant's motion to stay or dismiss under Colorado River doctrine and 735 ILCS 5/2-619(a)(3)). As established in the Complaint, URC contractually agreed that any reinsurance dispute with AXA Re related to the Cash Flow Insurance Policy would be settled in a court located in Illinois or New York. Although URC never amended the insurance policy language, the parties' agreement is memorialized in writing. URC now contends that, because of the superceded Texas choice of forum, AXA Re's Complaint in this Court

-7-

should be stayed or dismissed due to the pendency of URC's later-filed third-party complaint against AXA Re in Texas state court. As established below, URC's transparent attempt to avoid its contractual promise does not meet the strict standards required for this Court to deny AXA Re its statutory right to an Illinois federal forum for this diversity action. URC's motion should be denied.

## I. This Case Does Not Present the Exceptional Circumstances that Are Required to Overcome the Presumption Against Abstention Under the <u>Colorado River</u> Doctrine.

Although acknowledging in its motion that <u>Colorado River</u> abstention is only appropriate in "exceptional circumstances" (URC Mem. at 5), URC fails completely to display the rigor with which district courts must evaluate motions for abstention. In holding that federal district courts may stay a matter when there is a pending parallel state court action only in "exceptional circumstances," the Supreme Court cautioned that the district courts have a "virtually unflagging obligation to exercise the jurisdiction given them." <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817-18 (1976). The Seventh Circuit has explained that "the primary duty of the district court is to exercise the jurisdiction vested in it by law . . . ." <u>Sverdrup Corp. v. Edwardsville Cmty. Unit Sch. Dist. No. 7</u>, 125 F.3d 546, 549-50 (7th Cir. 1997). Thus, in applying the <u>Colorado River</u> doctrine, "we treat as paramount the overriding rule that abstention is the exception: '[A] federal court cannot lightly abjure its responsibility to assert jurisdiction, at least when the alternative is relegating the federal plaintiff to his remedies in state court.'" <u>Id.</u> at 550 (quoting <u>Lumen Constr., Inc. v. Brant Constr. Co.</u>, 780 F.2d 691, 694 (7th Cir. 1985)).

Assuming the existence of a parallel state action, in evaluating whether a case presents the particular circumstances that warrant an exception to the exercise of jurisdiction, district courts in the Seventh Circuit evaluate ten factors:

1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of the governing law, state or federal; 6) the adequacy of the state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

LaDuke v. Burlington N. R.R., 879 F.2d 1556, 1559 (7th Cir. 1989). In addition to these factors, the Court also should consider any "special factors counseling for or against the exercise of jurisdiction." Id. (quoting Calvert Fire Ins. Co. v. Am. Mut. Reins. Co., 600 F.2d 1228, 1234 (7th Cir. 1979)).

When examining these factors, the Court's task "is not to find some substantial reason for the *exercise* of federal jurisdiction . . .; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the *surrender* of jurisdiction." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25-26 (1983). Thus, "the balance [is] heavily weighted in favor of the exercise of jurisdiction," id. at 16, and "the presumption is against abstention." Sverdrup, 125 F.3d at 549-50. As a result of this presumption, "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding to it." Woodford v. Cmty. Action Agency of Green County, Inc., 239 F.3d 517, 522 (2d Cir. 2001).

As explained below, the special circumstances surrounding the forum selection clause in this case weigh heavily for the exercise of jurisdiction by this Court. Moreover, when the ten Colorado River factors are examined though the presumption against abstention – as they must be – it is clear that there are no exceptional circumstances in this case which would warrant the abdication of this Court's "virtually unflagging" obligation to exercise its jurisdiction.

**A.** **The Circumstances Surrounding the Forum Selection Clause Counsel for the Exercise of Jurisdiction by this Court.**

So as to prevent the <u>Colorado River</u> analysis from becoming a mechanical checklist of the ten relevant factors, the Seventh Circuit has instructed the district courts to consider any "special factors" affecting the abstention analysis, and to keep "a view to the realities of the case at hand." <u>LaDuke</u>, 879 F.2d at 1559. For instance, in <u>Colorado River</u> itself, which involved parallel cases involving water rights, one of the key considerations for the Supreme Court was the clear Congressional policy recognizing, and favoring, the availability of comprehensive state systems for adjudicating water rights.[3/] 424 U.S. at 819. Following in this vein, the Eighth Circuit held in <u>Dominiun Austin Partners, L.L.C. v. Emerson</u>, 248 F.3d 720, 727 (8th Cir. 2001), that policy considerations may outweigh concerns about "piecemeal litigation." <u>Id.</u> ("the strong federal policy in favor of arbitration requires giving full effect to arbitration clauses, even where that might lead to piecemeal litigation"). The Third Circuit has opined similarly, explaining that, to justify <u>Colorado River</u> abstention, "there must be a strongly articulated *congressional policy* against piecemeal litigation in the specific context of the case under review." <u>Ryan v. Johnson</u>, 115 F.3d 193, 198 (3d Cir. 1997) (emphasis in original). Thus, in <u>Associated Publications, Inc. v. Select Magazines, Inc.</u>, 1986 WL 4714, at *5 (N.D. Ill. April 11, 1986), the court denied the defendant's <u>Colorado River</u> motion where, "unlike in <u>Colorado River</u>, there is no clear Congressional policy against the federal court's exercise of jurisdiction in this case."

This case resembles <u>Associated Publications</u> in that URC has failed to identify any such Congressional policy against federal jurisdiction – and there is none. This case is even more inappropriate for abstention than <u>Associated Publications</u>, however, because there are strong policy

---

[3/] The Court was considering the McCarran Amendment, 43 U.S.C. § 666, which allows the joinder of the United States as a party in state court actions seeking to resolve water rights.

considerations in this case that favor this Court's retention of jurisdiction. This case implicates the general rule that courts will give effect to forum selection clauses, but only if those clauses are not the product of fraud or coercion. See Bonny v. Society of Lloyd's, 3 F.3d 156, 160 (7th Cir. 1993) (forum selection clauses are "unreasonable" if "their incorporation into the contract was the result of fraud"); Armco Inc. v. N. Atl. Ins. Co., 68 F. Supp. 2d 330, 340-41 (S.D.N.Y. 1999) (denying motion to dismiss that was premised upon a forum selection clause that "was the product of fraud").

The interplay of the Colorado River doctrine and forum selection clauses was discussed in Jackson Hewitt, Inc. v. J2 Fin. Servs., Inc., 901 F. Supp. 1061 (E.D. Va. 1995). In that case, the defendant moved to dismiss or stay the federal Virginia action in favor its prior-filed California state court action. In considering whether the case presented exceptional circumstances justifying Colorado River abstention, the court noted that the contracts underlying the parties' dispute contained Virginia forum selection clauses. Id. at 1062. The court explained: "because J2 agreed to be sued in this Court during an arm's-length negotiation, special circumstances in this case favor *retention* of jurisdiction." Id. at 1069 (emphasis in original). The court denied the defendant's motion, explaining that it had "a duty to see that valid contractual provisions, like the forum selection clauses in this case, are enforced when both personal and subject matter jurisdiction exist in this Court. These considerations dictate that this Court hear this matter." Id.

In this case, URC's bald assertions that this Illinois forum "has no connection whatever to the underlying dispute," and that Texas is "the forum to which URC and the reinsurers consented for Chase's suit on the Cash Flow Policy and the reinsurance contracts" (URC Mem. p.8) can only be made by disregarding the facts alleged in AXA Re's Complaint – which must be taken as true at this stage in the litigation. AXA Re informed URC on multiple occasions over the course of more than a year that it would not participate in a program in which the contracts called for the application

-11-

of Texas law in a Texas court. (Compl. ¶¶ 23, 52, 53, 55, 58.) To induce AXA Re to enter into their reinsurance relationship and to execute a cut-through endorsement in favor of Chase, URC represented, orally and in writing, that it would amend the Cash Flow Insurance Policy and Loss Payee Endorsement to provide for either New York or Illinois law and jurisdiction, and that it would file those policy documents with insurance regulators in Illinois – a state in which URC was and is licensed to issue insurance. (Id. ¶¶ 58-62.) AXA Re alleges that these representations formed part of its contractual relationship with URC – the agreement to file in Illinois "was an essential element of the reinsurance relationship between them." (Id. ¶ 117.) Thus, as in Jackson Hewitt, this Court should enforce the terms of the parties' agreement, and retain jurisdiction in the forum which the parties agreed would be appropriate to settle their dispute – Illinois.

Furthermore, AXA Re alleges that URC breached its duty of utmost good faith because, notwithstanding URC's oral and written representations, when the deal was finalized on July 9, 2002, URC had no intention to file any version Cash Flow Insurance Policy or Loss Payee Endorsement in Illinois unless AXA Re agreed to change the terms of the reinsurance in ways more favorable to URC. (Id. ¶ 90.) Consequently, the Texas choice of law and forum clauses in the Cash Flow Insurance Policy and Loss Payee Endorsement URC filed with the Texas DOI were the product of fraud and coercion. To allow URC to rely upon those clauses to abrogate AXA Re's choice of a federal Illinois forum would be the antithesis of the policies favoring the federal courts' exercise of its jurisdiction upon which Colorado River abstention is premised.

**B.    Consideration of the Ten Colorado River Factors Dictates Denial of URC's Motion for Stay or Dismissal.**

URC's analysis of the application of the ten Colorado River factors to this case is simply wrong. (See URC Mem. at 6-10.) As set forth below, eight of the factors either strongly favor the exercise of jurisdiction by this Court or are neutral, and therefore also weigh in favor applying the

presumption against abstention. See Woodford v. Cmty. Action Agency of Green County, Inc., 239 F.3d 517, 522 (2d Cir. 2001) ("the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding to it"). The only factors which arguably weigh in favor of abstention are the concern over piecemeal litigation and the existence of concurrent jurisdiction – issues that are present in any case involving parallel litigation, and therefore are insufficient to establish "exceptional circumstances" that justify denying AXA Re the federal Illinois forum to which it is entitled by both the diversity jurisdiction statute, 28 U.S.C. § 1332, and the forum selection clause.

### 1. The state has not assumed jurisdiction over property.

This factor does not apply in this case, as neither court has assumed jurisdiction over any property. Therefore, the factor weighs in favor of this court denying URC's request for a stay. See Bethlehem Contracting Co. v. Lehrer/McGovern, Inc., 800 F.2d 325, 327-28 (2d Cir. 1986) (the fact that "neither court presently has jurisdiction over any res or property" "militate[s] against dismissal" of the federal suit).

### 2. The federal forum is more convenient than the state forum.

This convenience factor clearly weighs in favor of AXA Re – the current federal forum is far more convenient than the Texas state court forum to resolve AXA Re's claims against URC.

Considering convenience from a geographical perspective, the Texas state court provides no advantages over this Court. AXA Re is a French corporation, with its principal place of business in Paris. URC is a California corporation, with its principal place of business in Calabasas, California. Thus, both parties will be traveling by air to either this Court or the Texas state court in Houston. Moreover, because URC is a licensed insurer in the State of Illinois, this obviously is not an inconvenient forum for it.

From a cost and efficiency perspective, the nationwide subpoena of the federal courts will

-13-

offer the parties in this case significant convenience and cost savings. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) (convenience of a forum includes the "relative ease of access to sources of proof [and] availability of compulsory process for attendance of unwilling witnesses"). Of the expected non-party witnesses in this case, only the Texas DOI – whose documents and testimony can likely be dealt with through stipulation – resides in Texas. Kathryn Lessmann and Jeffrey Gunchick, former URC employees who were involved in the negotiations with AXA and side-deal with Chase that form the basis of AXA Re's claims, reside in California. Michael Chapnick and Joanne DeSilva are lawyers working at Morgan Lewis & Bockius' New York office who were also involved in the negotiations and side-deal. If this proceeding were to be handled in Texas state court, the parties would be required to seek subpoenas from a variety of local state courts to depose or request documents from these non-parties.

URC's agreement to amend the Cash Flow Insurance Policy and Loss Payee Endorsement to provide for Illinois or New York jurisdiction, and its failure to do so, also are factors effecting the convenience analysis. In AAR Int'l, Inc. v. Nimelias Enter. S.A., 250 F.3d 510, 522 (7th Cir. 2001), the Seventh Circuit held that a forum selection clause "is relevant to the convenience analysis and should have been weighed by the court" in its Colorado River analysis: "The court should have determined whether [the forum selection clause] precluded the defendants from objecting to the inconvenience of Illinois altogether, therefore ceding the inconvenience factor of the abstention analysis . . . ." Id. (holding that error alone would require reversal and remand).

Thus, the federal forum is more convenient than the state forum, and this factor weighs against a stay.

3.      **This Court obtained jurisdiction before the Texas state court.**

This factor favors federal jurisdiction, as AXA Re's action against URC was filed first. Although AXA Re's filing of this action and Chase's filing of the Texas State Court Action both occurred on April 26, 2002, Chase did not sue AXA Re in Texas, and stated in its Complaint that it did not intend to add AXA Re as a party to that case. AXA Re only became a party to the Texas State Court Action when URC filed its third-party complaint on June 10, 2002 – one day before it filed its motion to stay or dismiss based on the pendency of that third-party claim.

4.      **Although state law governs, this factor does not favor a stay or dismissal.**

This factor is neutral. AXA Re acknowledges that its claims are governed by state law. However, the Seventh Circuit has clearly instructed that the absence of a federal question does not cut in favor of abstention, as to do so would discriminate against diversity jurisdiction. Evans Transp. Co. v. Scullin Steel Co., 693 F.2d 715, 717 (7th Cir. 1982) ( holding that courts cannot "allow[] a weaker showing of judicial economy to justify abstention in a diversity case than in a federal-question case"). See also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Thomas, 713 F. Supp. 62, 67 (S.D.N.Y. 1988) ("all diversity suits raise issues of state law, and thus the presence of such issues does not justify surrendering jurisdiction"). Thus, "abstention cannot be justified merely because a case arises entirely under state law." Ryan v. Johnson, 115 F.3d 193, 199 (3d Cir. 1997).

Only in "rare circumstances [will] the presence of state-law issues . . . weigh in favor" of surrendering jurisdiction. Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 (1983). This case does not present any such circumstances – the state law issues in this case are routine. See Nat. Union Fire Ins. Co., 713 F. Supp. at 68 (denying abstention where state law issues "are not obscure and do not require the special expertise of the Georgia state court"). The insurance and reinsurance law area is one "in which federal courts are called upon routinely to predict [and

-15-

apply] state law." Ryan, 115 F.3d at 200. If the presence of such state law questions were enough to meet this Colorado River factor, "it would be applicable in many more instances than the 'rare circumstances' required by the Supreme Court in Cone." Id. Moreover, URC contractually agreed that this dispute with AXA Re would be governed by New York or Illinois law. (Compl. ¶¶ 117, 127.) The Texas state court undoubtedly has less experience applying Illinois law than this Court, and the same probably holds true for New York law.

5.    **The state court action will not adequately protect AXA Re's contractual right to an Illinois forum.**

This factor favors the exercise of federal jurisdiction, as the Texas State Court Action will be insufficient to protect AXA Re's contractual right to resolve conflicts arising out of its reinsurance of the Cash Flow Insurance Policy in a court in Illinois or New York.

6.    **The federal proceedings have progressed further, and will progress faster, than the state proceedings.**

This factor also favors the federal proceedings. Although both the state and federal proceedings are in their initial stages, discovery in this case has begun. Both AXA Re and URC have submitted Rule 26(a) initial disclosures. Moreover, as a result of the New York Action, the parties already have substantially completed their discovery. URC already has produced most of its documents relating to the GLP transaction to AXA Re. AXA Re anticipates receiving only a very small set of additionally-responsive URC documents, primarily those relating to the transaction that came into being after URC complied with the subpoena in the New York Action. Moreover, every witness which AXA Re believes has relevant knowledge about the facts of this case already has been deposed – in some instances for multiple days – on the topic of the negotiations over the Cash Flow

-16-

Insurance Policy, reinsurance, and Cut Through Endorsement.[4] Thus, AXA Re foresees that the main project to undertake in discovery will be to take "trial depositions" to preserve the testimony of the out-of-state witnesses who cannot be compelled to come to this Court to testify. Indeed, as AXA Re explained to the Court at the scheduling conference, AXA Re believes discovery in this case could be completed by September 1, 2002.

In comparison, in the Texas State Court Action, the only steps that have been taken are (1) URC, and the defendant reinsurers, have each filed a general denial of Chase's allegations; and (2) URC filed its third-party action against AXA Re. There is no indication that the Texas State Court Action will proceed at a quicker pace than the one before this Court. Because URC and the other reinsurers filed general denials, the parties to that lawsuit have not even begun to consider what discovery will be relevant for URC's defenses to coverage under the Cash Flow Insurance Policy – no one has yet articulated those defenses. Similarly, it is unclear what, if any, discovery from the New York Action will be relevant to the Texas State Court Action.

Moreover, with AXA Re added, there are six parties in the Texas case. But the majority of AXA Re's claims against URC do not involve the other parties – they are premised upon misrepresentations and omissions that URC made directly to AXA Re. By cluttering the litigation of AXA Re's claims against URC with other issues and parties, it is inevitable that the Texas State Court Action will proceed more slowly than this action to resolve the AXA Re/URC dispute.

### 7.    AXA Re cannot remove the Texas State Court Action.

This factor weights against abstention. AXA Re, as a third-party defendant, has no ability to remove the Texas State Court Action to federal court.

---

[4] Eleven of the thirteen witnesses identified in URC's initial disclosures have been deposed, with the only exceptions being Irwin Thomas (a Texas DOI administrator) and Stuart De Haaff (URC's in-house counsel).

As an initial matter, the Texas State Court Action cannot be removed by URC and the other reinsurer defendants – the thirty day period in which the defendants could have filed a notice of removal has expired.  <u>See</u> 28 U.S.C. § 1446(b) (notice of removal shall be filed within thirty days of service of the initial pleading).  That leaves as the only grounds for removal URC's third-party claim against AXA Re.  However, 28 U.S.C. § 1441(a) does not authorize removal by third-party defendants, <u>see</u> <u>BJB Co. v. Comp Air Leroi</u>, 148 F. Supp. 2d 751, 752 (N.D. Tex. 2001) ("third-party defendants are not defendants within the meaning of § 1441(a)"); <u>Sturman v. Rush-Presbyterian St. Luke's Med. Ctr.</u>, 128 F. Supp. 2d 1141, 1142 (N.D. Ill. 2001) (same), and 28 U.S.C. § 1441(c) only authorizes a third-party defendant to remove a third-party claim if the basis for federal subject matter jurisdiction is the existence of a federal question of law.  <u>See</u> <u>BJB Co.</u>, 148 F. Supp. 2d at 754 (no third-party defendant removal under § 1441(c)); <u>Auto Transportes Gacela S.A. De C.V. v. Border Freight Distrib. & Warehouse, Inc.</u>, 792 F. Supp. 1471, 1471 (S.D. Tex. 1992) (same).  Thus, in the Texas State Court Action, where the only arguable basis for removal is diversity of citizenship, AXA Re cannot remove to federal court.

### 8.      The federal claim is not vexatious or contrived.

There is nothing vexatious or contrived about AXA Re's filing of its federal claim in the forum that URC and AXA Re agreed would be appropriate to resolve any dispute over their reinsurance relationship.  Indeed, as discussed above, if anything is contrived in this case, it is the timing of URC's filing of its third-party complaint against AXA Re in the Texas State Court Action, and its incredible assertion that AXA Re agreed to a Texas forum.  Consequently, this factor weighs against a stay.

9.    **Piecemeal litigation in this situation cannot be avoided because URC chose not to intervene in the New York Action.**

As its primary argument in favor of a stay, URC contends that "there is a very real danger of piecemeal litigation if this suit is allowed to proceed." (URC Mem. at 7.) However, the Seventh Circuit has clearly directed that "it is not enough, to justify abstention, that a failure to stay the federal suit may result in judicial diseconomy – in having two active lawsuits instead of one. That will always be possible when there is a parallel state suit pending." Evans Transp. Co. v. Scullin Steel Co., 693 F.2d 715, 717 (7th Cir. 1982). As one district court in this Circuit explained: "The fact that the two actions are duplicative can hardly be said to be exceptional or this factor would swallow the rule." Coatings, Inc. v. Nat'l Cold Drawn, Inc., 611 F. Supp. 958, 960 (E.D. Wis. 1985) (denying Colorado River motion). See also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Thomas, 713 F. Supp. 62, 68 (S.D.N.Y. 1988) (denying motion to abstain where the only factor favoring abstention was the "avoidance of piecemeal litigation).[5]

URC claims that this is a "classic" case for abstention because the Texas case "includes all the reinsurers and the insured, Chase." (URC Mem. at 8.) What URC ignores, however, is that piecemeal litigation will exist regardless of this court's decision on this motion, because the dispute between Chase and AXA Re is pending in the New York Action. See European Am. Bank v. Rampage Prods., Inc., 1988 WL 117441, at *3 (S.D.N.Y. Oct. 25, 1988) (refusing to abstain because "piecemeal litigation is inescapable in this case"). Chase recognized this fact when it did not sue AXA Re in the Texas State Court Action.

Indeed, the only opportunity for all claims related to the Cash Flow Insurance Policy and its

---

[5] This will also be the case for the Colorado River factor regarding the presence of concurrent jurisdiction in any diversity case in which the defendants in the state court action are subject to the personal jurisdiction of the state court.

reinsurance to have been decided by one court was destroyed when URC elected not to intervene in the New York Action. There can be no doubt that URC was aware of the New York Action – URC produced thousands of documents in response to a subpoena in that case, and at least four URC employees or former employees were deposed for a total of at least seven deposition days. URC retained counsel in New York to monitor the case and the trial on behalf of URC. It was apparent that Justice Gammerman was receptive to allowing other interested parties in the insurance policies at issue in the New York State Action intervene in AXA Re's declaratory judgment claims – AIG was allowed to make just such an intervention. Moreover, if the New York court grants Chase leave to amend its New York Complaint against AXA Re to include a claim for monetary damages, the new issues in the New York Action likely will be repetitive of Chase's claims and the defenses to be raised by URC and the other reinsurers in the Texas State Court Action.

* * *

URC does not contest, nor could it, the fact that this action is properly before this Court based upon the federal diversity jurisdiction statute, 28 U.S.C. § 1332. Nonetheless, the only arguably viable justification URC presents for abstention is the concern over piecemeal litigation, a concern that is inadequate to divest AXA Re of its right to a federal forum: "When [a stay] operates to deny a litigant a federal forum to which the jurisdictional statutes appear to entitle him it should not be granted unless there are reasons going beyond the interest in judicial economy, an interest engaged whenever there are parallel suits." Evans Transp. Co. v. Scullin Steel Co., 693 F.2d 715, 718 (7th Cir. 1982). That alone would be justification for denying URC's motion, however, this case presents the added special considerations of (1) a forum selection clause that AXA Re negotiated so as to avoid the very forum URC now contends should resolve this dispute – the Texas state court; and (2) the fact that the Texas State Court can never fully resolve this matter as a result of the pendency

of the New York Action. Thus, this case is far from a "classic" case for abstention. Instead, this is only a "classic" case in the sense that it is one in which the general rule should be applied – this Court should exercise its jurisdiction over AXA Re's claims.

II.    **URC's Motion to Stay or Dismiss Under 735 ILCS 5/2-619(a)(3) Has No Merit.**

      A.    **735 ILCS 5/2-619(a)(3) is a Procedural Rule that Does Not Apply in this Diversity Action.**

As URC acknowledges, 735 ILCS 5/2-619(a)(3) only applies in federal court if it is a substantive rule, not merely a rule of procedure. See In re Air Crash Disaster Near Chicago, 803 F.2d 304, 313-15 (7th Cir. 1986). The courts of the Northern District of Illinois are divided as to whether § 2-619(a)(3) is procedural or substantive. Although a number of courts identified in URC's brief follow the pre-Colorado River decision in Seaboard Finance Co. v. Davis, 276 F. Supp. 507 (N.D. Ill. 1967), the "recent trend of cases" holds the section to be a rule of procedure. ADS Publishing Serv., Inc. v. Summit Group, Inc., 1996 WL 332684, at *1-2 (N.D. Ill. June 13, 1996) (Norgle, J.). See MG Capital LLC v. Sullivan, 2001 WL 1609382, at *5-6 (N.D. Ill. Dec. 17, 2001) (Darrah, J.); Basic v. Fitzroy Eng., Ltd., 949 F. Supp. 1333, 1336 (N.D. Ill. Dec. 6, 1996) (Norgle, J.); Mattsson v. Gerry Wood Prods. Co., 1996 WL 147921, at *2-3 (N.D. Ill. Mar. 28, 1996) (Madden, J.); Beggerow v. Affiliated Ins. Consultants, Inc., 1996 WL 197680, at *5 n.2 (N.D. Ill. Apr. 22, 1996) (Marovich, J.); Fofi Hotel Co. v. Davera Corp., 846 F. Supp. 1345 (N.D. Ill. 1994) (Nordberg, J.); Chicago Title & Trust Co. v. Sizes Unlimited, Inc., 1991 WL 119147, at *2 (N.D. Ill. June 28, 1991) (Duff, J.). See also Indiana Lumbermens Mut. Ins. Co. v. Specialty Waste Servs., Inc., 774 F. Supp. 525, 527-28 (C.D. Ill. 1991).

The Seventh Circuit has not decided the issue in a published decision, but did affirm and adopt the Basic court's ruling in an unpublished decision. Basic v. Fitzroy Eng., Ltd., 132 F.3d 36, 1997 WL 753336 (7th Cir. 1997). In Basic, the district court held that § 2-619(a)(3) is "a state

procedural rule inapplicable to a federal court proceeding." 949 F. Supp. at 1336.  The affirmance of <u>Basic</u> was consistent with now-Seventh Circuit Judge Rovner's resolution of the issue when she sat on the district court: "It is readily apparent that the interests underlying Section 2-619(a)(3) are 'merely procedural' . . . ." <u>W.E. O'Neil Constr. Co. v. Nat. Union Fire Ins. Co. of Pittsburgh, PA</u>, 721 F. Supp. 984, 989 (N.D. Ill. 1989) ("Because § 2-619(a)(3) speaks only to matters of procedure or court administration about which the federal courts have independent competence, the Court finds that application of the statute by a federal court would be inappropriate.")

Moreover, as Judge Darrah noted in <u>MG Capital, LLC</u>, the Illinois courts themselves consider § 2-619(a)(3) to be a procedural rule.  2001 WL 1609382, at *5.  The Illinois Supreme Court has explained that the purpose of the rule is "to foster orderly procedure by preventing multiplicity of actions." <u>People ex rel. Lehman v. Lehman</u>, 215 N.E.2d 806, 809 (Ill. 1966).  <u>See also</u> <u>A.E. Staley Mfg. Co. v. Swift & Co.</u>, 419 N.E.2d 23, 26 (Ill. 1980) (§ 2-619(a)(3) is a "procedural device" related to a motion for forum non conveniens).  Recent pronouncements by the Illinois appellate courts have reached the same conclusion: § 2-619(a)(3) is procedural.  <u>See</u> <u>Crowell v. Golz</u>, 744 N.E.2d 332, 338 (Ill. App. Ct. 2001) (§ 2-619(a)(3) "is procedural in nature"); <u>Village of Mapleton v. Cathy's Tap, Inc.</u>, 729 N.E.2d 854, 856 (Ill. App. Ct. 2000) ("§ 2-619(a)(3) is an inherently procedural device").  Thus, this Court should conclude that 735 ILCS 5/2-610(a)(e) is a procedural rule that does not apply in this diversity case.

**B.     Even if this Court Applies § 2-619(a)(3), a Stay or Dismissal Is Not Appropriate.**

In enacting § 2-619(a)(3), the "Illinois legislature did not intend that two separate actions concerning the same subject matter could never proceed simultaneously . . . ." <u>Mattson</u>, 1996 WL 147921, at *3 (citing <u>A.E. Staley Mfg. Co.</u>, 419 N.E.2d at 26.  Therefore, "[e]ven when the 'same cause' and 'same parties' requirements are met, § 2-619(a)(3) does not mandate automatic

dismissal." Kellerman v. MCI Telecomms. Corp., 493 N.E.2d 1045, 1053 (Ill. 1986). Rather, "[m]ultiple actions in different jurisdictions arising out of the same operative facts may be maintained where the circuit court, in a sound exercise of its discretion, determines that both actions should proceed." Zurich Ins. Co. v. Baxter Int'l, Inc., 679 N.E.2d 664, 668 (Ill. 1996).

A party seeking a stay under § 2-619(a)(3) "must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it would operate." May v. Smithkline Beecham Clinical Labs., Inc., 710 N.E.2d 460, 464 (Ill. App. Ct. 1999). Thus, the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." Id. (quoting Zurich Ins. Co. v. Raymark Indus., Inc., 572 N.E.2d 1119, 1123 (Ill. 1991)). In other words, in exercising its discretion under § 2-619(a)(3), "the trial court must weigh the prejudice to the nonmovant if the motion is granted against the policy of duplicative litigation." Kapoor v. Fujisawa Pharm. Co., 699 N.E. 2d 1095, 1100 (Ill. App. Ct. 1998). Factors a court should consider in weighing the appropriateness of a stay under § 2-619(a)(3) include "comity; the prevention of multiplicity, vexation or harassment; the likelihood of obtaining complete relief in the foreign jurisdiction; and the *res judicata* effect of a foreign judgment in the local forum." May, 710 N.E.2d at 464-65.

"Comity means giving respect to the laws and judicial decisions of other jurisdictions out of deference." Id. at 465. "Principles of comity do not justify staying a matter when the competing case has only been pending for several months," Hapag-Lloyd (Am.), Inc. v. Home Ins. Co., 729 N.E.2d 36, 43 (Ill. App. Ct. 2000), or when it is in its "infant pretrial stages." May 710 N.E.2d at 465. The factor of comity thus does not favor a stay in this case, where the Texas State Court Action has not progressed in any significant respect.

-23-

In fact, "comity demands that deference should be given to the Illinois action, as § 2-619(a)(3) relief should not be used to fend off the public policy of the State of Illinois." Hapag-Lloyd (Am.), 729 N.E.2d at 44. See also Zurich Ins. Co., 679 N.E.2d at 669 ("[l]itigants . . . should not be permitted to invoke § 2-619(a)(3) of the Code as a means for evading this state's public policy"). As discussed above, policy considerations favor giving effect to choice of forum clauses – and the parties here expressly contracted for an Illinois forum. Moreover, the State of Illinois has a manifest public policy interest in resolving a dispute involving URC, an insurer that is licensed by the Illinois DOI, based in part upon URC's false representation that it immediately would file the Cash Flow Policy and Loss Payee Endorsement in Illinois.

Considerations of multiplicity, vexation and harassment also do not favor a stay. The discovery regarding AXA Re's claims against URC already has been substantially completed as part of the New York Action. In comparison, due to the general denials filed in the Texas State Court Action, the parties there have not even identified what issues will be the subject of discovery. See Crain v. Lucent Techs., Inc., 739 N.E.2d 639, 647 (Ill. App. Ct. 2000) (affirming decision not to grant stay where "discovery is much further along in the Illinois case"); Hapag-Lloyd (Am.), 729 N.E.2d at 1096 (finding that multiplicity factor did not weigh in favor of stay where "all of the important documents have been identified"). Also, because discovery in the Texas action on URC's third-party claim against URC will mirror that of this case, "the duplication of effort should not be significant." May, 710 N.E.2d at 465. Furthermore, AXA Re's filing of its claim against URC in their contractually-agreed upon forum is not vexatious or harassing. The only possibly vexatious claim is URC's later-filed third-party claim against AXA Re in the Texas State Court Action. Thus, URC cannot "make out a clear case of hardship or inequity in being required to proceed with the Illinois litigation." May, 710 N.E.2d at 465.

In contrast, AXA Re cannot obtain complete relief in the Texas State Court Action because, if AXA Re must litigate its claims in that court, AXA Re will not receive the benefit of its bargain with URC to resolve any dispute in an Illinois forum. Although the Texas state court is capable of adjudicating the claims between AXA Re and URC, the very act of litigating in the Texas forum denies AXA Re its contractual rights. Those rights can be vindicated by a trial in Illinois, which will have a *res judicata* effect in the Texas State Court Action, just as the rulings of the Texas state court would be *res judicata* here.

A final key factor the court should consider in ruling on a § 2-619(a)(3) is whether the case bears a "legitimate and substantial relation to Illinois." A.E. Staley Mfg., 419 N.E. 2d at 26. See also Zurich Ins. Co., 679 N.E.2d at 668 (holding district court abused its discretion when it stated case that was "in every way, an Illinois dispute); Golden Rule Ins. Co. v. Robeza, 502 N.E.2d 1070, 1073 (Ill. App. Ct. 1986) (affirming denial of stay where "the other action here is pending in another state, and because the litigation has a legitimate and substantial relation to Illinois"). Here, as discussed above, Illinois has legitimate and substantial interest in this case – which AXA Re and URC, a licensed Illinois insurer, expressly contracted should take place in Illinois.

Consideration of all of these factors weighs heavily in favor of this Court's retention of jurisdiction. Consequently, this Court should deny URC's motion to stay or dismiss under 735 ILCS 5/2-619(a)(3).

## CONCLUSION

For the foregoing reasons, this Court should deny URC's motion to stay or dismiss.

Respectfully submitted,
AXA CORPORATE SOLUTIONS

By: _____
One of its Attorneys

-25-

Richard T. Franch
Joel T. Pelz
Megan B. Poetzel
JENNER & BLOCK, LLC
One IBM Plaza
Chicago, IL 60611
312 222-9350

Dated: July 16, 2002